UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLON SCARBER, #343088,

        Plaintiff,                 Civil Case No. 11-12821

v.                                         Hon. Arthur J. Tarnow
                                                  Magistrate Judge David R. Grand

DORA (ARAMBULA) FISHER, *et al.*,

        Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT IN PART, AND DENY IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [8]

Before the court is Defendants Dora Fisher and Steven Rivard's Motion for Summary Judgment [8], which has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [13]. For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** as to claims against them in their official capacities, and **DENIED** in all other respects.

### I.    INTRODUCTION

    **A.**    **FACTUAL BACKGROUND**

On June 30, 2011, Marlon Scarber ("Plaintiff"), who is currently incarcerated in the Michigan Department of Corrections ("MDOC"), initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.

Plaintiff alleges that between December 1 and December 29, 2010, he was employed as a unit porter at the St. Louis Correctional Facility. Compl. [1], ¶11. During that time period, while Plaintiff was cleaning cells, another unnamed prisoner pressed his emergency call button,

1

which led Resident Unit Officer Dora Fisher ("Fisher") to remotely open that prisoner's locked cell door. *Id.*, ¶12; Defs.' Mot. S.J. [8], p. 1. According to Plaintiff, the "emergency" was that the other prisoner needed a plunger. Compl., ¶12. Plaintiff alleges that shortly thereafter, he approached Fisher to tell her that remotely opening a prisoner's locked cell door immediately in response to the prisoner pushing his call button compromised Plaintiff's safety because he "had been threatened" by another particular prisoner (whose cell was apparently in the same Unit under Fisher's control). *Id.*, ¶¶13-14.

Fisher allegedly told him the other prisoner would not hurt him, and that she did not need his insight as to how to perform her job. *Id.*, ¶15. As a result, Plaintiff attests that on December 9, 2010, he sent a kite to Warden Steve Rivard ("Rivard"), reporting his safety concerns and his interaction with Fisher. *Id.*, ¶15; Ex. 1. Plaintiff alleges that he did not receive a response to that communication, and that he sent another similar kite on December 17, 2010, addressed to Rivard, an unnamed Deputy Warden, and an unnamed Assistant Deputy Warden of Housing. *Id.*, ¶16, Ex. 2. Plaintiff attached copies of the kites to his complaint. *Id.*, Exs. 1 and 2.

Plaintiff alleges that on December 30, 2010, while he performed his cleaning detail, the same prisoner who had previously threatened him, and who Plaintiff had warned Fisher about, pressed his emergency call button. *Id.*, ¶¶17-18. He alleges that Fisher remotely released the prisoner's cell door without ascertaining why he had pushed his call button. *Id.* The prisoner allegedly exited his cell with a broken-off, sharpened broom handle and a padlock attached to the end of a belt. *Id.*, ¶19. Plaintiff claims that the prisoner assaulted him and that "his head was split wide open and bleeding…" *Id.*, ¶¶20-22. Plaintiff received gauze and bandages, was placed in a segregation cell, and was sent to an outside hospital for further treatment. *Id.*, ¶¶22-24.

On January 3, 2011, Plaintiff filed an administrative grievance, and the MDOC's ultimate conclusion was that: "[s]taff acted in accordance with applicable policies" "by opening the prisoner's door in order to ascertain the nature of the emergency…" *Id.*, Ex. 4, p. 6. Plaintiff claims that in the weeks following his grievance filing, he was harassed by other prison officers. *Id.*, ¶¶27-33. On January 13, 2011, Plaintiff was transferred to another facility. *Id.*, ¶34.

Plaintiff later filed the instant complaint, claiming that the conduct of various MDOC staff members, including Fisher and Rivard ("Defendants"), violated his rights under the Eighth Amendment to the United States Constitution. *Id.*, ¶¶36-43. More specifically, Plaintiff claims that Defendants acted with deliberate indifference by failing to protect him against substantial risk of serious harm. *Id.*, ¶¶36-40, 43. Plaintiff also claims that Rivard is liable for failing to properly train and supervise Fisher. *Id.*, ¶¶41-42.

### B.    PROCEDURAL HISTORY

On August 30, 2011, Defendants filed a Motion for Summary Judgment [8] and supporting affidavits. Defendants argue at the outset that Plaintiff failed to allege that Rivard was personally involved in the activity that forms the basis of the complaint, and that therefore Plaintiff cannot sustain a § 1983 claim against him. Defs.' Mot. S.J., pp. 3-6. Defendants further argue that they are both entitled to summary judgment because Plaintiff has failed to establish that their failure to protect him from assault constituted deliberate indifference under the Eighth Amendment. *Id.*, pp. 6-9. Finally, Defendants suggest that the claims against them should be dismissed because they are shielded by qualified immunity insofar as they are sued in their individual capacities, and by Eleventh Amendment immunity insofar as they are sued in their official capacities. *Id.*, pp. 11-14. On October 3, 2011, Plaintiff filed a Response [11] in which he takes issue with each of Defendants' arguments other than their Eleventh Amendment

immunity defense to claims against them in their official capacities, which claims Plaintiff has agreed to dismiss. Pl.'s Resp., p. 21.[1]

## II.    STANDARD OF REVIEW

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). In summary judgment proceedings, "the evidence should not be weighed, and the credibility of the witnesses should not be questioned." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 532 (6th Cir. 2008). Rather, in determining whether a genuine issue of material fact exists, the court must assume the truth of the non-moving party's evidence and construe all reasonable inferences from that evidence in the light most favorable to that party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

In response to a summary judgment motion, the opposing party may not rest on its pleadings nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual

---

[1] Accordingly, the court recommends granting Defendants' motion for summary judgment as to claims against them in their official capacities.

4

dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## III.   ANALYSIS

### A.   DEFENDANT FISHER

Plaintiff claims that Fisher violated his Eighth Amendment rights by failing to protect him from assault, despite her alleged knowledge that he was at substantial risk of serious harm. Compl., ¶¶36-39. The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citation omitted). Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners," and officials may be held liable if they know of and disregard an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994).

To sustain a claim under the Eighth Amendment for a prison official's failure to provide protection from danger, an inmate must show that the official was deliberately indifferent to a "substantial risk of serious harm" to the inmate. *Id*. at 828. To prevail on a claim of deliberate indifference, a plaintiff must present evidence from which a trier of fact could conclude "that the defendant: (1) had actual knowledge of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) actually drew the inference" that there was a substantial risk of harm. *Taylor v. Little*, 58 Fed. Appx. 66, 67 (6th Cir. 2003); *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) ("The concept of 'deliberate indifference' encompasses both a subjective and an objective component."). Having drawn the inference that a substantial risk of serious harm existed, an official may be held liable only if he or she then "disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Farmer*, 511 U.S. at 847; *see also Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "Whether a prison official had the

5

requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

Here, disavowing "actual knowledge" of facts from which she could have inferred that Plaintiff faced "a substantial risk of serious harm," Fisher contends that "at no time did Plaintiff state to her that he was being threatened by another prisoner or that he needed protection." *See Taylor*, 58 Fed. Appx. at 67; Defs.' Mot. S.J., pp. 10-11, Ex. B, ¶3. Plaintiff, however, has submitted sworn statements to the contrary. Specifically, he claims that he advised Fisher that remotely releasing a prisoner from a locked cell into an area where Plaintiff was cleaning in response to that prisoner pushing his emergency call button, put his safety at risk. *See* Pl.'s Resp. [11], Ex. 6, ¶3. Furthermore, Plaintiff allegedly informed Fisher that a prisoner in that unit had previously threatened him. *Id.*, ¶4.

Assuming the truth of Plaintiff's evidence, construing all reasonable inferences in the light most favorable to Plaintiff, and without weighing the evidence or evaluating the parties' credibility, Plaintiff's allegations raise a material dispute as to whether or not Fisher had objective knowledge of facts from which she could have inferred, and did in fact infer, that Plaintiff faced "a substantial risk of serious harm" prior to the assault. *See Mills v. Lafler*, 2008 WL 4386750, at *11 (E.D. Mich. Sept. 25, 2008) (finding factual dispute about whether guard had been warned of risk to prisoner); *see also In re Scrap Metal Antitrust Litigation*, 527 F.3d at 532; *Ciminillo*, 434 F.3d at 464; *Jabbaar v. Campbell*, 826 F.2d 1063 (6th Cir. 1987), *vacated on other grounds*, 838 F.2d 471 (6th Cir. 1988) (vacating a grant of summary judgment where conflicting affidavits filed by plaintiff inmates and a defendant prison employee demonstrated a genuine factual dispute as to a constitutional claim).

The court also rejects Fisher's argument that she cannot be liable for failing to protect Plaintiff because "the attack here was an isolated incident," and because Plaintiff "cannot establish a pattern of undisputed and unchecked violence upon him." *See* Defs.' Mot. S.J., p. 10. For support, Fisher relies primarily on the Sixth Circuit's statement in *Stewart v. Love*, 696 F.2d 43, 45 (6th Cir. 1982), *rev'd on other grounds*, that "generally an isolated or occasional attack is not sufficient to state a claim" for deliberate indifference. In *Stewart*, the prisoner had advised prison officials about rumors of an impending assault against him. The prison addressed the prisoner's concern by transferring his cell for a period of six months. When he returned to his original cell he reported "only the most general allegations that 'someone was going to get hit on the head,'" but he was not moved a second time. *Stewart*, 696 F.2d at 45. He was then assaulted and later sued the prison officials. Although the Sixth Circuit upheld the district court's determination that the prison officials did not violate the prisoner's Eighth Amendment rights under the facts of that case, it made clear that deliberate indifference could not be shown because the officers had taken at least some action in response to the prisoner's concerns:

> Of course, the allegation that the plaintiff had informed the prison officials of an alleged plot to injure him does raise somewhat thorny questions. Had no action whatsoever been taken to protect the plaintiff, the court would be inclined to allow this action to proceed to a full hearing.

*Id.*

The hypothetical posited by the Sixth Circuit was litigated in fairly recent Eastern and Western District of Michigan cases. In *Randolph v. Decker*, 2006 WL 3613204 (W.D. Mich. Dec. 11, 2006), the prisoner advised a prison guard that his cellmate threatened him with violence if he did not move cells. The prison guard did nothing about it and a few days later the cellmate stabbed the prisoner in the ear. A lawsuit ensued, and the guard moved for summary judgment pointing to the same "isolated incident" verbiage that Plaintiff relies on in this case.

7

The court rejected that argument, noting that "unlike in [*Stewart*], prison officials took no action." *Id.* at *4. The court also noted that the prisoner's concerns were based on first-hand threats, not the "rumor mill." *Id.* The more recent Eastern District case of *Mills*, 2008 WL 4386750, reached the same conclusion on very similar facts. There, the plaintiff prisoner alleged that he advised guards of a threat he had received from another specific prisoner. The guards took no action and the plaintiff was attacked by the other prisoner. The prisoner sued, and the guard defended by disputing that the plaintiff had warned him about the other prisoner's threats, and by arguing that the assault was an "isolated incident," at any rate. *Id.* at *8, fn. 6, *10. The court rejected both arguments, finding a fact question about what warning the prisoner had given the guard, and holding that "unlike in Stewart, [the prisoner] alleges that [the guard] took no action even though he was repeatedly made aware of the [] threats and assaults." *Id.* at *11.

The Plaintiff's allegations in the instant case make it analogous to *Randolph* and *Mills*, and the mere fact that Plaintiff was assaulted on a single occasion is of no consequence.[2] Plaintiff alleges that he advised Fisher not only of a specific prisoner who threatened to harm him, but also of the *modus operandi* by which such an assault was likely to occur – pushing a call button when Plaintiff was in the area cleaning, gaining release, and attacking Plaintiff. Compl., ¶¶13-14. He also alleged that Fisher took no action to abate that risk, and facilitated the assault by releasing the prisoner from a locked cell when Plaintiff was cleaning in the area. *Id.*, ¶¶15-22. Taken in the light most favorable to Plaintiff, those allegations raise a material question of fact about whether Fisher "had actual knowledge of facts from which the inference

---

[2] Although *Farmer* suggested that if a "plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past . . . then such evidence **could** be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk," it does not follow that such evidence must be present to establish such knowledge by the prison official. *Farmer*, 511 U.S. at 842-43 (emphasis added).

8

could be drawn that a substantial risk of serious harm existed" and "actually drew the inference" that there was a substantial risk of harm to Plaintiff. *Taylor,* 58 Fed. Appx. at 67; *Mills*, 2008 WL 4386750 at *11; Randolph, 2006 WL 3613204, at *4.

Because Plaintiff has raised disputed issues of material fact, the court should deny summary judgment as to the claims stated against Fisher in her individual capacity.

### B. DEFENDANT RIVARD

Plaintiff alleges that Rivard violated his Eighth Amendment rights by failing to protect him from assault after being informed of Fisher's alleged disregard for Plaintiff's safety. *See* Compl., ¶¶40-43.[3] Rivard characterizes Plaintiffs' claims against him as being "premised on his role of supervisor" and "on respondeat superior liability," which claims are not cognizable under 42 U.S.C. §1983, Defs.' Mot. S.J., pp. 3, 6, and he argues that, in any event, he was unaware of a risk to Plaintiff and thus could not have acted with deliberate indifference. *Id.*, p. 9. Each of those arguments fails on the present facts.

#### i. Deliberate Indifference

As with Fisher's claim that she was unaware of any risk to Plaintiff, Rivard's assertion that he did not receive Plaintiff's pre-assault kites[4], and thus could not have been deliberately indifferent to any risk to Plaintiff, may ultimately prove to be meritorious. However, Plaintiff has presented competent contrary evidence, and at the summary judgment stage the court must take those facts in the light most favorable to him as the non-moving party. *Ciminillo*, 434 F.3d

---

[3] While it is not entirely clear from Plaintiff's complaint, his claims that Rivard failed to supervise and train Rivard appear to be based on the same facts that support his failure to protect claims against Rivard – that Rivard failed to speak with Fisher after he received Plaintiff's kites about how Fisher's alleged opening of cell doors was placing Plaintiff in danger. The court will analyze those claims accordingly.

[4] Rivard's sworn assertion is that he reviewed "all kites" he received, and that his records did not "show any being from the Plaintiff." Defs.' Mot. S.J., Ex. A ("Rivard Affidavit"), ¶3.

9

at 464. *Sullivan v MDOC*, 2008 WL 2938092 (E.D. Mich. Jul. 28, 2008) is extremely analogous and instructive on this point.

Sullivan was incarcerated in a Michigan prison and had allegedly received threats from fellow inmates related to his practice of late-night typing with the lights on. He alleged that he had sent a letter to an assistant deputy warden about those threats and requested a transfer to a different Unit. *Id.* at *1. Sullivan was not transferred, and was attacked by another prisoner. *Id.* at *2. He sued the assistant warden and other prison officials, asserting, among other claims, that they failed to adequately protect him. The assistant warden moved for summary judgment, claiming that she had not received Sullivan's letter and was unaware of a risk to him. *Id.* at *5. The district court denied the assistant warden's summary judgment motion, finding that at the summary judgment stage, it could not make credibility determinations and had to view the facts in the light most favorable to the Sullivan. *Id.*

Here, too, the court must accept Plaintiff's assertion that he sent the kites to Rivard. Moreover, the kites' contents raised a specific enough safety concern that, assuming Rivard's receipt of them, a genuine dispute remains as to whether or not he had objective knowledge of facts from which he could have inferred, and did infer, that Plaintiff faced "a substantial risk of serious harm" prior to the assault, and thus whether he acted with deliberate indifference in failing to address that risk. *Id.*; *see also In re Scrap Metal Antitrust Litigation*, 527 F.3d at 532; *Ciminillo*, 434 F.3d at 464. *Cf. Allen*, 2009 WL 3063315 at *4, n.2 (distinguishing case where claim was properly dismissed because the substance of a prisoner's letter failed to put the warden on actual or constructive notice of any constitutional violation).

### ii.     Supervisory/Respondeat Superior Liability

Rivard's next argument is that Plaintiff's claims are "premised on his role of supervisor" and "on respondeat superior liability," and that such claims are not cognizable under 42 U.S.C. §1983.  While his general proposition is correct, the argument is misplaced with respect to the facts as alleged by Plaintiff.  "[A] § 1983 claim may not be based on respondeat superior liability; instead, the 'supervisory official at least [must have] implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011) (quoting *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1985)).  "A 'mere failure to act' is not enough; 'the superviso[r] must have actively engaged in unconstitutional behavior'" if he or she is to be held liable.  *Id.* (quoting *Gregory v. City of Lousiville*, 444 F.3d 725, 751 (6th Cir. 2006)); *see also Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (a plaintiff's "mere claim" that defendants were aware of the alleged misconduct, but did not then take appropriate action, is insufficient to impose liability on supervisory personnel under § 1983).

However, "while the rule that 'liability cannot be based on a mere failure to act' appropriately applies when a discrete violation of rights has occurred and the supervisory officials' only involvement is that they learned about it afterwards . . . the rule does not apply to cases challenging ongoing conditions of confinement."  *Allen v. Caruso*, 2009 WL 3063315, *4 (E.D. Mich. 2009) (distinguishing cases in which supervisors learn about an alleged violation only *after* it occurred from cases in which supervisors are presently aware that an inmate's "safety is seriously at risk and, despite such knowledge, 'fai[l] to take reasonable measures to abate' the risk") (citations omitted).  The state's obligation to meet inmates' basic needs "would have no meaning if a prison official could fail to provide [for those needs] and then evade

11

liability simply by pleading that he 'failed to act.'" *Id*. at 5. Therefore, an inmate's Eighth Amendment claim may be based on "a prison official's act *or omission*." *Farmer*, 511 U.S. at 834 (emphasis added).

Here, Plaintiff claims that, via kites dated December 9 and December 17, 2010, he "personally notified . . . and informed [Rivard] of the threats and unsafe conditions the Plaintiff faced." Pl.'s Resp., pp. 11-12; Compl., ¶¶40-43, and Exs. 1-2. Specifically, in the document dated December 9, 2010, Plaintiff complained that Fisher had previously opened prisoners' cell doors in response to the emergency call button without first determining whether there was an actual emergency. Compl., Ex. 1. Plaintiff advised Rivard that a specific prisoner had threatened him, but that Fisher was still "unwilling to consider [his] complaint and concerns for [his] safety." *Id.* Similarly, in the document dated December 17, 2010, Plaintiff wrote that he had informed Fisher that "opening cell doors just because someone has pressed their emergency call button would result in someone getting hurt, and it would most likely be the porters," and that, in that situation, "it would be wise for her to go down to the prisoner's cell to see if there is an emergency," but that Fisher had "refused to do so." Compl., Ex. 2.

Thus, while Rivard cannot be held liable under a theory of supervisory or respondeat superior liability, this is not a case in which it is alleged only that the warden was made aware of a discrete constitutional violation *after* it occurred, and failed to act responsively. *See Siggers v. Campbell*, 652 F.3d at 695. Rather, it challenges Rivard's own alleged failure to act in response to a specific and substantial threat to Plaintiff's safety, thus preventing the court from finding, as a matter of law, that Rivard did not act with deliberate indifference to a serious safety risk to Plaintiff. *See Farmer*, 511 U.S. at 847; *Allen*, 2009 WL 3063315 at *4. It similarly raises a

12

material question of fact as to whether Rivard's alleged conduct "at least implicitly authorized, approved and knowingly acquiesced" in Defendant Fisher's alleged failure to protect Plaintiff.

In sum, Plaintiff has raised issues of material fact about whether Rivard received the kites in question, and whether the objective and subjective prongs of the test for "deliberate indifference" have been satisfied. Accordingly, the court should deny summary judgment as to the claims stated against Rivard in his individual capacity.

### C. IMMUNITY DEFENSES

Defendants raised qualified immunity and Eleventh Amendment immunity as affirmative defenses to Plaintiff's claims. *See* Defs.' Mot. S.J. at 11-13, 13-14. As noted above, Plaintiff agreed that the Eleventh Amendment bars all claims against Defendants in their official capacities, and thus the court recommends granting their motion for summary judgment as to those claims. *See supra*, fn. 1. Therefore, the court need consider only Defendants' qualified immunity defense with respect to claims against them in their individual capacities.

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore "[t]he privilege is an immunity from suit and not a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In conducting the two-step inquiry into whether "the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established," the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

13

*See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).  "A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Flint v. Ky. Dep't of Corrs.*, 270 F.3d 340, 346 (6th Cir. 2001) (quoting *Poe v. Haydon*, 853 F.2d at 425-26).

Here, the constitutional right at issue – "[a]n inmate's right to be free from violence at the hands of other prisoners" – had been held to be "clearly established" before the time of the alleged constitutional violation in this case.  *See Bishop*, 636 F.3d at 772 (citing *Farmer*, 511 U.S. at 833).  And, for the reasons noted above, Plaintiff has raised factual disputes sufficient to withstand summary judgment regarding whether Defendants' acts or omissions violated that clearly established right.  Thus, there exists a genuine issue of material fact "involving an issue on which qualified immunity turns," and the court should deny Defendants' summary judgment motion as to that defense.  *See id.* (affirming district court's denial of qualified immunity where the plaintiff made out a triable issue of fact as to prison officials' deliberate indifference to inmate safety); *Flint*, 270 F.3d at 346; *and cf. Doe v. Bowles*, 254 F3d 617, 620-23 (6th Cir. 2001) (on interlocutory appeal, declining to disturb the district court's qualified immunity rulings because unresolved factual issues precluded appellate review).

**IV.    CONCLUSION**

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [8] be **GRANTED** as to claims against them in their official capacities, and **DENIED** in all other respects**.**

14

Dated: January 27, 2012                          s/ David R. Grand
                                                                                    DAVID R. GRAND
                                                                                    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that, on January 27, 2012, the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing.

<u>s/  Felicia M. Moses</u>

FELICIA M. MOSES
CASE MANAGER